LokiNG-, J.,
delivered the opinion of the court:
Under a common contract of hire of personal property, the bailee is bound to pay the stipulated hire for the term agreed upon, and return the property at the expiration of the term in as good order and condition as it was received, reasonable wear and tear in the particular service contracted for excepted. The bailee thus takes the risk of loss, and in such event musbindem-nuy the owner for it, and to do this he must pay the owner the hire up to the time of the loss, and the value of the property in the condition it should have been in then. In such a contract it would be the legal duty of the hirer to notify the owner of the loss of the property, because that fact would be specially in the hirer’s knowledge, and would not be likely to be in the owner’s knowledge, and. would be material to his rights under the contract.
*241 In this case, the terms between the parties were that the .stipulated hire of $6 per day for each barge should be paid till it was “ returned or accounted for? These terms, we think, expressly charged the United States with the duty of notifying the owners of the loss of the barges, and subjected them to the payment of the hire till notice of such loss was given by them or the fact of the loss was in some way known to the owners.
And the circumstances of the case, make the terms -stated especially equitable; for the owners had no power of providing by contract for their own security. In impressing the barges, the United States exercised their right, and the owners could not stipulate the nature of the service, nor how long it should continue, nor where the barges should be employed. They were taken from their protection and supervision into the exclusive control of the United States, and the owners had no other means of knowing where the barges were, or what they were doing, or what had become of them, than such information as the United States should give them. The owners, therefore, had no other means.of knowing or acting upon their legal rights, i. e., of knowing when the hire ceased, and the right to their value accrued, and w7hen the necessity of acting on their rights, and making their claims according to them, began.
The evidence does not show precisely when the barges were lost, nor when the loss was ascertained by the United States, nor when they informed the petitioners of the loss. And the petitioners claim in their petition that they were not notified of the loss until June 1, 1867. Bat the evidence shows that the fate of the barges 13 and 34 was a subject of inquiry by the petitioners as early as May, 1866, and that in answer to such inquiries they were informed that the Government would do what they could to return the barges or give such information as they could procure to the petitioners. The petitioners learned then, therefore, that, so far as was known to the officers of the Quartermaster’s Department specially charged with tbe employment and possession of the said barges, their employment or existence was not known; and we think that this was a fair ground for the presumption that their hire had then ceased, and we allow for their hire, therefore, till May 1,1866, and this date was fixed by the counsel for the petitioners in his argument.
It is observable that by the evidence the inquiries of the *242 petitioners and tlie answers of tbe quartermaster above referred to were confined to barges No. 13 and 34, and nothing is shown of the loss or of any inquiry as to barge No. 38. But the claimants in their petition, and their learned counsel in his argument, place the three barges on the same ground, and we have done so.
As to the value of the barges: In their petition the claimants fix the value of each barge at the time it was lost at $700, and in carrying out their claim in figures they so specify the item of value ; and although the evidence would authorize a higher valuation, we cannot exceed that claimed in the petition.