SALOMON v. UNITED STATES.

1. The act of June, 1862, requiring contracts for military supplies to be in writing, is not infringed by the proper officer having charge of such matter accepting delivery of such supplies after the day stipulated, nor is a verbal agreement to extend the time of performance invalid.

2. When, under a written contract, made by a person to deliver such supplies as, *ex. gr.*, corn at one time fixed, the quartermaster in charge receives part of the corn from such person for the government, and then at a later date, no objection being made to the delay, receives the rest, and gives a receipt and voucher for the amount and the price, and the government uses such part of it as it wants, and suffers the remainder to decay by exposure and neglect, there is an implied contract to pay the value of such corn, which value may, in the absence of other testimony, be presumed to be the price fixed in the voucher by the quartermaster.

APPEAL from the Court of Claims; the case being thus:

A statute of June 2d, 1862,* thus enacts:

"It shall be the duty of the Secretary of War, Secretary of the Navy, &c., to cause and require every contract made by them severally on behalf of the government, or by their officers under them appointed, to be reduced to writing, and signed by the contracting parties with their names at the end thereof."

---

* 12 Stat. at Large, 411.

This statute being in force, Salomon entered into a written contract, on the 28th of July, 1864, with the quartermaster's department, to deliver at Fort Fillmore, 12,000 bushels of corn, at such times and in such quantities, of not less than 1000 bushels per month, as the assistant quartermaster should direct, 9000 bushels before the 1st day of January, and the whole amount by the 1st day of May, 1865. The 9000 bushels were delivered and paid for before the 1st day of May, and about this there was no dispute. Some negotiations took place afterwards between Salomon and the quartermaster of that military department, concerning the delivery of the remainder, the finding in regard to which was not very clear. Salomon did, however, deliver the remainder of the corn at Fort Fillmore, October 15th, 1865, by depositing it in the military storehouse at that place. The chief quartermaster's clerk afterwards examined this corn, weighed some of the sacks, counted the remainder, and gave to Salomon a receipt for the amount, stating that it completed his contract. This clerk then and there accepted and took actual possession of the corn, and the chief quartermaster gave to Salomon the usual voucher for the sum due. The corn was sound when delivered, but was injured by reason of the defective and leaky condition of the storehouse at Fort Fillmore.

The government declining to pay the amount of the voucher, Salomon filed a petition in the court below for payment. The court decreed that he should be paid for a part of what he had finally delivered, and which the government used, but not for the residue, which had proved unserviceable and been lost by decay arising from the defective and leaky condition of the storehouse. Salomon took this appeal.

*Mr. T. J. D. Fuller, for the appellant:*

No complaint is made by the government of the non-delivery of the whole amount by the 1st of May, nor does it appear in any manner that the contract was closed, or treated as closed. For aught that appears, the United States

received all they wished, up to the 1st of May. Certain it is that they accepted the residue when it was tendered; and if, through *their* fault, a part has been lost by bad storage the appellant should not suffer.

*Mr. C. H. Hill, Assistant Attorney-General, contra:*

The claimant cannot recover for the corn for which this suit is brought under the original contract, as that was ended by his failure to deliver the corn mentioned therein within the time specified.

If, therefore, there was any agreement by the quartermaster to buy the grain mentioned in the claimant's petition, it was an oral contract, and contrary to the act of 1862, requiring all such contracts to be in writing.

*Reply:* The contract, so far as the corn in question is concerned, was an entire one, and the acceptance and use of a part was an acceptance of the whole. There was no *new* contract. Parol evidence of the enlargement of the time of performance, in a written contract, is admissible in evidence.[*] By implication, or necessary intendment, here was an extension of time for the delivery of the corn. The decree of the court below is in conflict with *Lyon* v. *Bertram.*[†]

Mr. Justice MILLER delivered the opinion of the court.

Whether we regard the delivery made in October as made under a verbal extension of the time stipulated in the original contract, or consider it as a new transaction in which the government received and took possession of the corn, and used part of it and permitted the remainder to be injured in its hands, we think the claimant is equally entitled to be paid for it.

The act of 1862, requiring contracts for military supplies to be in writing, is not infringed by the proper officer having charge of such matter, accepting delivery of such supplies

---

[*] Emerson v. Slater, 22 Howard, 42.    [†] 20 Id. 149.

after the day stipulated, nor is a verbal agreement to extend the time of performance invalid.

And if this were not so, when the quartermaster in charge receives of a person corn for the government, gives a receipt and voucher for the amount and the price, and the government uses such part of it as it wants, and suffers the remainder to decay by exposure and neglect, there is an implied contract to pay the value of such corn, which value may, in the absence of other testimony, be presumed to be the price fixed in the voucher by the quartermaster.

Judgment reversed, with directions to enter a judgment for claimant for the

Amount of the said voucher.