Wright, J.
We will first dispose of sundry assignments •of error, which may be said to be preliminary to the main questions involved.
The city alleges error in the action of the referee in this: After the trial before him had begun, Cameron, against objection, filed a paper, styled “ supplemental petition,” claiming an additional sum for items not mentioned in the ■original account. Counsel for the city say, with truth, that under section 142 of the code a supplemental petition may be filed, alleging facts “ occurring after the former petition,” etc., but we do not think that the mere name gives force to the pleading, so much as the allegations it contains. This paper might just as well have been called an amended petition, and we can not see how an omission so to name it, can affect any substantial right, and under the liberality allowed in the matter of amendments, we do not perceive any vital error on the part of the referee in this regard. The same may be said as to the objection to the filing of the amended petition. Both these pleadings had for their object the setting up of additional items of an ac■count pf great length. If any thing had been overlooked in the original petition, it was entirely proper to bring it in by some subsequent pleading.
After the report had been returned into court, counsel for the city made a motion to order the referee to file a supplemental or amended report, specifying what items claimed by plaintiffs were allowed by the referee, and what amounts were allowed on such items which together amounted to the'total sum set forth in the report; and also to specify what items, if any, claimed by plaintiffs, were ■disallowed by the referee in making up his report. This motion was overruled, which is claimed to be error.
This motion does not appear to have been made while the cause was in the referee’s hands, nor does it .appear that the city called upon him to make any more detailed or specific report while the case was pending before him. Had this been done, doubtless the officer would have gone into *356 -the particulars required, but how was it error iu him not to do what he was not asked to do ?
The referee is substituted for the court, and the cause proceeds before him as though it was tried in court, and upon submission. Code, 283 ; Lawson v. Bissell, 7 Ohio St. 129; Bell v. Crawford, 25 Ohio St. 402.
Nor do we think that the court erred in not sending the case back for the specifications required by counsel for the city. This is held to be entirely a matter of discretion. Averill Coal and Oil Co. v. Verner, 22 Ohio St. 372. In this case, a motion was made to recommit the report to the referee, that the party might except to the findings, and tender a bill of exceptions to the referee for allowance. A refusal to allow the motion was not error, the matter being discretionary. If the refusal to send the report back to' allow exceptions was not error, a refusal to do so for the purpose of having the report made specific in order to make exceptions to the specifications, could not be error.
There were no proper exceptions taken by the city to evidence, during the progress of the trial before the referee. Scattered through the record are some twenty-three instances, where an objection has been noticed, but it is not stated who made the objection, what the action of the referee upon it was, nor does any thing in the nature of an exception appear. There is, therefore nothing, in the nature of objection to evidence, occurring at the trial, of which a court of error could take cognizance, except in a single instance. Upon page 371, it appears that one A. B. Mullett was called, sworn and testified; and then follows this: “ The counsel for defendant having then and there duly excepted to the calling of said witness.” No objection is made to the evidence he gave, and we can not see' how an objection to the witness can invalidate his testimony. Counsel, however, do not press the point, and we pass it.
"With regard to the pleadings it might be said, that they áre general in form. The petition is under section 122 of the code, on an account, as has been stated, a copy of which *357 is attached. A petition may be so made, although there was a special contract, if it had been fully performed, or if the additions or modifications had been sanctioned by defendants, and, in such case, indebitatus assumpsit would lie, or plaintiff might elect to plead specially.
In answer, the city makes no objection to 'the mode oí ,-stating the cause of action; there is no denial of liability, except in amount; no item of the account is specifically denied; no want of .power in the board of’hospital commissioners is ’ pleaded; the want of written orders is not insisted on ; nor the fact, if it be one, that the amount of the appropriation was exceeded. All these matters were substantial matters of defense, and should have been pleaded, but the answer, in its terms, by implication, if not direct admission, concedes the capacity of the board to make this contract and its validity; the power of the board to contract for additions, extras, etc., and takes issue only ■on the amount and value.
Upon this state of pleadings it appears to have been agreed, that the evidence should be received, subject to exceptions, and at the end, the city made certain exceptions, eleven in number. This is one : “ To all testimony as to .the dealings of the board of hospital commissioners with other contractors than the plaintiffs.” This is an- example •of the rest, and might be called a general exception. To .give a party any benefit from such an exception, would require the court to go through this entire record of seven hundred pages, and pick out all items of evidence which the exception might, by any possibility, cover, and if we were to repeat this investigation for each of the eleven exceptions, it may be easily seen that such a voyage of dis•covery would be not only uncertain in results, but boundless in extent.
An exception of this kind should be, at least, as discriminating as that to the charge of the court. The party should himself present, in totidem verbis, the evidence to which he desires to object, and which he desires to rule out; .or, at least, indicate so that it can be ascertained with rea *358 sonable certainty. It is not for tbe court to proceed upon an exploring expedition, upon an intimation that it is desirable.
It is claimed by the city that the board of hospital commissioners were only allowed a certain sum for building the hospital ; that this limit of expenditure had been already reached, and it was impossible to go beyond it for the purpose of paying Mr. Cameron, and he is therefore without remedy. To ascertain if this-be so, we must examine the statutes bearing upon the subject.
April 6, 1866, a law was passed (S. & 8. 884), to provide for the erection of hospitals in cities of the first class. By the second section, a board of “hospital commissioners” was created, who were “ authorized to erect a suitable building for a hospital on the site dedicated for that purpose. They shall have power to adopt a plan, to appoint and fix the compensation of a clerk, an architect, and a superintendent of the work, or either of them, and to make all eont'racts.for the execution of the same.” By other sections these commissioners are authorized to cause plans, specifications, drawings, and forms of bids and contracts to be prepared. The contracts are to be made in the name of the-city. Contracts for work and material are not to be made-except after thirty days’ notice by advertisement.
Efom these provisions it is apparent, that the general power is given to these officers to build the hospital, and to-make the necessary contracts therefor.
The commissioners then, having the general power to-build a hospital and to make the necessary contracts therefor, section seven of the lawr as amended (S. & S. 886), provides “ that for tbe purpose of raising money to defray the expenses accruing,” etc., from the erection of the new hospital, the “ city council ” is authorized to issue bonds. The-aggregate amount of which shall not exceed $500,000, the-bonds not to be issued until the question of building is submitted to a popular vote.
By a subsequent law, May 5,1868, (S. & S. 886), the “ city”" is empowered to issue $250,000, more bonds “ for the pur *359 pose of completing and furnishing the said hospital.” It is claimed that these laws limit the amount of expenditure to-$750,000, and that no debts in excess of that amount can be paid.
It has been seen that the building of the hospital, preparing plans, making contracts, etc., was left to the hospital commissioners, and it might, therefore, be argued, that the-amount of expenditure was to be determined by them. It was the “ city council ” and the “ city” that was to issue-the bonds.
The law here appears to recognize two bodies, with different jurisdiction and powers, to act on behalf of the city. The board of hospital commissioners to erect the building, and the “ city council ” to issue the bonds, and it does not necessarily follow that a restriction, if such there be, upon the one, equally limits the action of the other.
In Green v. Mayor of New York, 60 N. Y. 303, the charter of the city required contracts “ made or let by authority of the common council” to be upon ten days’ advertisement. By the act of 1871, to extend the distribution of Croton water, the corporation was authorized, by the commissioner of public lauds, to expend, in making certain improvements, a sum not exceeding $1,500,000. It was held that the commissioner had sole and exclusive control of the work, that the common council had no authority or jurisdiction over the subject, and the law requiring ten days’ advertisement, applied only to contracts let by the council, and not to them let by the commissioner. A like view is maintained in People v. Van Nost, 64 Barb. 205.
So, here, it might be argued that the law had created two separate bodies to act in this manner — the council to issue the bonds, and the board of hospital commissioners to erect the building, and do all pertaining thereto. And though the city might not be able to issue more than the prescribed amount of bonds, does it necessarily follow that the board can not, under any circumstances, go beyond that amount ? Or, perhaps, it might be better to state the proposition thus: If the board have gone beyond the *360 amount, and the city has accepted the work, and is enjoying the benefit of it, can it refuse payment?
It will be observed that nowhere in these statutes is there expressed, in terms, a limit as to the cost of the building.
They do not say in so many words that the hospital shall not cost more than $750,000, nor that the commissioners shall expend no more than that sum. There is a limit to the amount of bonds to be issued — a limit applicable only to the council and city.
In the ease cited by the city, Curtis v. United States, 2 Nott. & Hun. 144, it was held “that a statute limiting the amount of expenditure is notice, in law and in fact, to the contractor, that the ofiieers of the government can not exceed the prescribed bounds. If they are exceeded, the claimant must be deemed to have gone beyond the fixed limit at his own risk.” But in this case there was a fixed limit in the statute. It provided that the secretary of the treasury might erect a mint, etc., “ at a sum or sums which shall not in the whole exceed the sum of $300,000.”
It can only be that the board is limited to the sum named, by holding that, as a fund was provided, that fund can not be exceeded. But it is not always true that the amount of the appropriation, is the controlling feature. If there is an. express law authorizing a work, and an appropriation provided to pay for it, and in the progress of the work it is found that the amount is not sufficient, what shall be done ? Is the work to be abandoned, and all the money spent to be lost? "Why shall that part of the law providing the fund be held to override every other part, and nullify the express authority given to do the work ? Is it not more consonant with approved rules of construction to say that, taking the whole law together, its primal object is the construction of the building or improvement, and that the appropriation is secondary, leaving its deficiencies to be supplied by application to the law-making power, or to those implied powers that may always be found adequate to carry into execution those which are express? Nor is it an answer to say this opens the door to thieving and *361 swindling; we are speaking of cases where thieving and swindling are not an element of consideration.
In Fowler v. United States, 3 Court of Claims, 43, the appropriation was a given sum, for the specific work; it exceeded that sum, yet the contract was held valid.
In further support of the proposition that the limit of expenditure has been reached, and that payment of the Cameron debt can not he made, the city cites the act “ to limit the power of public officers and agents in making •contracts,” passed March 30, 1857. 1 S. & C. 889. The first section of that law is as follows : “ It shall be unlawful for any officer or agent of the state, or of any county, township, city, or incorporated village therein, who may be intrusted with the construction, improvement, or keeping in repair any public building or work of any kind, or with the management or providing for any public institution of whatsoever kind, to make any contract or contracts binding, or purporting to bind, the state, or any such county, township, or incorporated village, to pay any sum or sums of money, not previously appropriated for the purpose for which such contract or contracts are made, and remaining unexpended and applicable to such purpose, unless such •officer or agént shall be lawfully and expressly authorized to make such contract or contracts.” The second section expressly holds such officer or agent of the city liable, and the city exempt.
It is unlawful, under this act, for the officer or agent of municipal bodies to make any contract or contracts to pay sums of money not “preciously appropriated.” If, therefore, the appropriation is a given one, and the contracts are just equal to that amount, those contracts are valid. If contracts are thereafter made, so as to be in excess, though such contracts might be invalid, how could those originally made be so ? Being once valid, a subsequent exercise of unlawful authority could not destroy that validity. City of Lansing v. Van Gorder, 21 Mich. 456. If, therefore, when Cameron’s contract was made, its amount, with that of *362 others, did not exceed the appropriation, any subsequent excess could not defeat his rights.
What, then, is the fact ? If it were true that the board had already contracted up to the full sum, and then Cameron had made his contract, all of which was beyond the limit, there would be force in the argument that he was bound to know the law and the extent of authority conferred upon the agent with whom he was dealing, and therefore he could not recover. But we do not understand the record as showing any such state of fact. We do not understand the record as showing that when this contract was made the limit had been reached. Indeed, from Dr. Quinn’s testimony,.we understand the reverse. He states that when the bids were all in, it was found that the aggregate exceeded the amount they were authorized to spend. The board did not desire to go beyond the limit, and they set to work devising how they should keep within it. The architect made a calculation what work the appropriation would cover, and they awarded the contracts accordingly.
If Cameron’s right of recovery is to be defeated, on the ground that the limit of expenditure was exceeded, it should be clearly shown that at the time he. made his contract that limit had been reached. This is not done; and if, when his contract was made, the board had not gone beyond the limit, the contract was valid, at least in this respect. If subsequently the board went on and made other contracts, and exhausted the fund in payment of claims originating after that of Cameron’s, this can not be set up as a defense why he should not be paid.
The next point to be considered is one discussed by counsel under the title “ written orders.”
By section 5 of the act relating to hospitals, it is provided as follows : “All contracts shall be made in the name of the city, and it shall be stipulated therein that the contractors will not execute any extra work, or make any modifications or alterations of the work mentioned in the specifications and plans, unless ordered in writing by the board, *363 and that they will not claim any pay for the same unless such written order is given.”
It is urged by the city that this clause of the statute is not directory merely, but mandatory, and a very elaborate argument is made upon the subject. If we rightly apprehend the argument, it is that the statute peremptorily demands written orders for all work done, and if they are omitted, a recovery can not be had for such work. It is supposed that here corporate power is given to act in a certain way, and action in any other way is null and void, and the following authorities, with many others, are cited r “ Where a corporation relies upon a grant of power from the legislature for authority to do an act, it is as much restricted to the mode prescribed by the statute for its exercise as to the thing allowed to be done.” Farmers’ Loan and Trust Co. v. Carroll, 5 Barb. 615, 649. “ The act of incorporation enables them to contract, and when it prescribes to them a mode of contracting, they must observe that mode, or the instrument no more creates a contract thau if the body had never been incorporated.” Head v. Prop. Ins. Co., 2 Cr. (U. S.) 127.
These propositions of law, in the cases to which they are applied, are not denied, and we might admit to the fullest extent the position that the statute is mandatory; and the-question is, what does it command? It says that, as to all contracts, “it shall be stipulated therein” that the contractor shall do no extra work, etc. That stipulation is. contained in the contract, in the following words :
“ The said party of the second part (Cameron) further agrees not to execute any other than the above portions of work, or make any alterations or modifications in the work mentioned in the specifications and plans, unless ordered in writing by the said architect and superintendent, and countersigned by the board, nor to claim payment for the same, unless such written order be produced.”
There was extra work, and there were modifications and alterations, and there were no written orders, and it is claimed that there can be no recovery for these extras. The *364 contract and statute, says the city, are both so clear, positive, and peremptory, that the board can not waive or dispense with any provision of either; they must be complied with to the letter, or every thing done is a vain thing.
To all laws and to all contracts there is a spirit as well as a letter, and if both can fairly be complied with by a construction that reaches what is the justice of a case, the ends of the law are attaiued. Instruments are not to be •construed so as to arrive at absurd or impossible results.
The law was that a corporation acted by its seal only. If this were carried out in practice, no corporation could transact its business a single day. A corporation can only act through its directors, but it is hardly necessary to convene the board, preparatory to the purchase of a load of coal or box of matches.
When the law provides that a corporation shall only contract in writing, no matter how positive or peremptory the language may be, it can not be made a rigid, unbending rule in every case which can by any possibility arise.
While the contract is executory, the rule may be enforced ; but after the contract has been executed, and all its stipulations fully performed, the corporation having received the benefit, it is too late to apply the rule. Pixley v. R. R., 33 Cal. 183.
Before this work of extras had been done, it might have been easily prevented by the board. But if they actually directed it to be done; if the contractor solicited written orders, and was informed they were not necessary; if thus the work was done and well done, the city receiving the benefit of it, and the only defense against payment is that the orders were not in writing, the law will not put a construction upon the statute or contract that will make such defense successful. While recognizing the fact that the act was designed to prevent fraud or imposition, the court will be careful to see that it is not made the occasion of either.
The laws with regard to corporations redound with provisions and restrictions as to the mode and manner of contracting. These provisions are sometimes most stringent, *365 and yet they are not always observed, simply because it is impossible to do so.
If tbe corporation clearly has the power to do a given thing, although a particular form is prescribed, which shall be the evidence of its action, the absence of this evidence does not destroy the power.
If corporate transactions are void because the prescribed form is not pursued, it does away with much of the law of implied contracts as it relates to such bodies. That corporations are liable upon implied contracts, even where it is required that they should be express, is too well settled for dispute. 2 Kent Com. 291; Argenti v. City of Francisco, 16 Cal. 255 ; Maher v. Chicago, 38 Ill. 266; Messenger v. Buffalo, 21 N. Y. 196.
The following eases may serve to show the extent to which courts have gone in holding corporations to accountability, where attempt was made to escape it:
In Pixley v. Railroad, 33 Cal. 183, the charter of a railroad provided that “no contract shall be binding on the company unless made in writing.” The plaintiffs were attorneys, and were employed, by verbal agreement merely, to conduct litigation. They did so, and then sued for their fees, and the company defended on the ground that the contract was not in writing. It is probable that the first impulse that arises in every mind is to say that if such defense is law, it is none the less rascality.
It is, however, held in that ease, that the contract, having-been executed, the corporation having received the consideration can not escape liability.
In Fister v. Trustees of School District, 15 Barb. 323, a teacher sued for her wages. She was employed by one of' the trustees only, and it was defended that she was not employed at a legal meeting of the board. The court held that the contract having been executed, where a person is employed by one assuming to act for the corporation, and the employe renders services with the knowledge of the officers, the corporation must pay for those services. Though *366 ■where the contract is still executory, and nothing done un•der it, it might be different.
Perhaps it is true that in some eases a different rule may be applied to a mere private corporation like a railroad and a public or municipal corporation. It is often held that in case -of a municipal corporation the party dealing must advise himself of the extent of chartered power, and must know exactly how far the public agent can go in binding his principal, but even here it is often true that the same rule is applied to the corporation as is applied to an individual. An elaborate case on the subject is Argenti v. Francisco, 16 Barb. 255. It holds that contracts of corporations, whether public or private, stand upon the same footing with the contracts of natural persons, being subject to the application of the same principles with regard to ratification and estoppel.
The plaintiff entered into contracts with an officer of the ■city for the making of certain improvements in the city. The improvements were under the supervision of city officials, who approved and received them. The city authorities were informed of the facts, and took no steps to repudiate the contracts or advise plaintiff that he should not be paid. The city was held liable, although there was no evidence that the officer was expressly authorized to make the contracts. The silence of the city authorities, under the circumstances, sanctioned the officer’s acts, and estopped the city from denying his authority. She having acquiesced in the contracts from the beginning to the end •of the improvements, never questioning their validity, until ■she had received all the benefits of performance, to repudiate them now would be a fraud on the plaintiff. Seagraves v. Alton, 13 Ill. 266.
In City of Dayton v. Pease, 4 Ohio St. 80, with regard to injuries to third persons, municipal corporations are held to be liable just as individuals. A. & A. Corp., §§ 219-238; San Francisco Gas Light Co. v. City, 9 Cal. 453.
It is perhaps well to bear in mind the fact that two distinct characters are assigned to municipal corporations. *367 Dillon speaks of the governmental, legislative, or public character ; and also of the proprietary or private character. 1 Dill. Mun. Corp., § 39. In its governmental or public character, it represents the state, while in the other it is a mere private corporation. As a political institution, the municipality occupies a different position, and is subject to different liabilities from those which are imposed upon the private corporation. But because these two characters are united in the same legal entity, it does not follow that the shield which covers the political equally protects the private corporation.
The power given a city to construct sewers, is not a power given for governmental purposes; nor is it a public municipal duty imposed upon the city, like that of keeping streets in repair, but it is a special legislative grant to the city for private purposes. The sewers of the city, like its works for supplying the city with water, are the private property of the city; the corporation and its corporators —its citizens — are alone interested in them; the outside public, as people of the state at large, have no interest in them, as they have in the streets of the city, which are public highways. Detroit v. Corey, 9 Mich. 165.
The corporation of a city possesses two kinds of powers, one governmental and public, and, to the extent they aro held and exercised, is clothed with sovereignty; the other private, and, to the extent they are held and exercised, is a legal individual. The former are given and used for public purposes, the latter for private purposes. While in the exercise of the former, the corporation is a municipal government, and while in the exercise of the latter is a corporate legal entity. Loyd v. Mayor, 1 Seld. 369.
With regard to the liability of a municipal corporation for the acts of its officers, the distinction is, between an exercise of those legislative powers which it.holds for public purposes, and, as a part of the government of the country, and those private franchises which belong to it as a creature of Ihe law; within the sphere of the former, it enjoys the exemption of government, from responsibility of *368 its own acts, and for the acts of those who are independent corporate officers, deriving their rights and duties from the sovereign power. But in regal’d to the latter, it is responsible for the acts of those who are in law its agents, though they may not be appointed by itself. Commissioners v. Duckett, 20 Md. 476.
By reason of this distinction it is that the city is liable for certaiu acts of omission of officers and agents, while in other cases, it is not. It may be generally held liable for the neglect of its agents. But it is not liable for the acts of a mob, although its duty is to keep the peace. Western College v. Cleveland, 12 Ohio St. 375; Prather v. Lexington, 13 B. Mon. 559 ; Ward v. Louisville, 11 B. Mon. 184.
Nor is a city liable for damages done by fire, though its duty is to provide fire apparatus, and keep in repair, public cisterns, and it fails in this duty. Wheeler v. Cincinnati, 19 Ohio St. 19. The reason given therefor in Brinkmeyer v. Evansville, 29 Ind. 191. is, that a municipal corporation is, for the purposes of its creation, a government possessing to a limited extent sovereign powers, which,, in their nature, are either legislative or judicial, and may be denominated governmental or public. The extent to which it may be proper to exercise such powers, as well as the mode of their exercise, by the corporation, within the limits prescribed by the law creating them, are, of necessity,, intrusted to the judgment, discretion, and will of the properly constituted authorities, to whom they are delegated. And being public and sovereign in their nature, the corporation is not liable to be sued, either for a failure to exercise, them, or for errors committed in their exercise. But when duties of a purely ministerial character are expressly enjoined by law in such corporation, or arise by necessary implication, they are responsible for any damages resulting to individuals from a neglect to perform them, or from their performance in an improper manner. Small v. Danville, 51 Me. 359; Lorillard v. Monroe, 1 N. Y. 392. It is important, therefore, to bear in mind these two phases of corporate existence. When this hospital was being built, or *369 contracted for, the city was exercising no governmental function, it was not appearing in its political character, or manifesting any of the attributes of sovereignty. It was-the owner of land, upon which it was desirous of building a house; it was managing its own property. Oliver v. Worcester, 102 Mass. 489. Where it is doing merely this,, how does it, fro hac vice, differ from any other private corporation ? If a city should undertake to run a railroad, can any one doubt but that it would be liable, just as a railroad corporation would be, under like circumstances? Bailey v. New York, 3 Hill, 531.
Returning now to the statute, it provides that this stipulation shall be inserted in the contract; and, it is well said, by counsel, that this clause should have no other, or more force, than any other clause, and might be waived, or dispensed with, if the parties so agreed. The statute provides for the whole contract, and gives authority to every part; and there seems to be no reason why one part should be of graver import than another.
But let us see what is the object of the statute,. Plainly it is to protect the city and tax-payers from overcharges, under the guise of extras, alterations, etc. But, as against-whom was this protection desirable? Not against the acts of the board of commissioners. They did not do the extras, and execute modifications and alterations, for the purpose of getting pay therefor. It was the contractor who did this, and it was against the contractor that barriers were to be erected. The statute says, the stipulation, in the contract, shall be, that the “ contractors shall not execute any extra work, or make modifications or alterations,” and “they will not claim pay,” etc.
The apprehension was, that contractors might go on, and do work outside of the contract, without the knowledge or consent of the board, and then claim pay therefor, although the board would not knowingly have allowed the work to be done. It was to limit the power of the contractor to bind the city by implied contracts for extras and the like. *370 It is to impose upon him a limit, as to the extent to which, he shall go. He shall go to the extent of his contract, and, of his own motion, no farther.
There is no limit, however, imposed upon the board, as to what extras or modifications they may make, as far as expense is concerned, unless it is the limit of the appropriation. It does not appear that the legislature thought it necessary to guard against the board in this particular; for they must be held to have power to order extras, etc., the only restriction being, that it should be by written order. If there was danger that the board would exceed their authority, and defraud the city, in this matter of extras, the legislature would not have given them the fullest power to do so, only stipulating that they should do it in writing and by written orders. It is, therefore, evident to us, that the act, in providing for these written orders, intended to guard against the acts of the contractors, and not those of the board.
If, then, the contractor did nothing but what the board directed him to do, and intended he should do; if he went •beyond the limits of his contract, and did extras; not of his own motion; not without the knowledge and consent •of the board; but with their complete, though, perhaps, informal authorization, it would hardly seem proper that he should fall under any ban of the statute. While the statute seeks to guard against the fraud of the contractor, it should not be construed, if it can be avoided, so as to perpetrate injustice upon him.
Again: The necessity of their written orders was to protect the board; to prevent misunderstanding, between them and the contractor, as to what was to be done and what was not to be done. If a dispute arose, upon a settlement of accounts, between contractor and board, as to whether a piece of work was ordered or not, perhaps the board might fall back upon their contract, and ask, “ Where is your written order ? ” But suppose there was no dispute; suppose the board agreed that they did order the work, .and it was done as ordered, it would be a strained defense *371 for them to say, there could be no recovery because there was no written order.
If, then, the written orders were only for the protection of the board, why might they not be waived when the necessity for them ceased.
In County of Randolph v. Post, 93 U. S. 502, it is held: “ It would be an unreasonable restriction of the rights and powers of a municipal corporation to hold that it can not waive conditions found to be injurious to its interests.”
In this case a county in Illinois had subscribed to the stock of a railroad, and was to issue bonds in payment of the subscription, provided the road was done by a certain date. This date for completion was subsequently extended, .and it was held that the county was authorized to waive .this .condition as to the time of completion, and that the bonds were valid.
And other cases may be cited where parties acting under statutory authority depart therefrom, and are yet held bound by their acts. In case of the United States, contracts made by the secretary of war must be in writing (12 Stat. at Large, 411); and yet, when such written contracts are made, they are sometimes departed from in those very .particulars where writings are most important, and yet the government has been held bound. As where a contract was made for the delivery of a large amount of supplies, by a given date, and were not delivered at that date, but long after, it was held that the statute was not infringed by .accepting the supplies after the day stipulated for delivery, .and that a verbal agreement to extend the time of performance was valid. Saloman v. United, States, 19 Wall. 17.
What are then the facts of the case9
And firstly, it must be remembered that in the contract the board reserves to itself liberty, from time to time, to direct or order any modifications or alterations- to be made in the specifications and plans, or in any portion or portions ■of the material or work, and in like manner to direct and •order the omission altogether of any portion or portions of the work in the plans and specifications, or to substitute any *372 ■'other work or works in the place of such portion or portions, and such modifications, alterations, omissions, and 'substitutions may be so directed and ordered to be carried, •out by the board in respect to any portion of the work, but the same or any extra work which shall be directed shall not vitiate or impair the contract.
■ From this-it will be seen that the board intended to and did retain the power to make any changes they might please, and they put no limit upon their power in this re■spect. Furthermore, the contract provides that if the' contractor fails to proceed with the work according to contract, or shall not proceed to the entire satisfaction of the architect and superintendent, the board, on three days’ notice, may employ any other person to proceed with the-work and the contract, at the option of the board, shall be void; the board still reserving their right of action against the contractor for non-fulfillment of his contract. In case .of such notice given, the amount already paid to the contractor is to be in full of all work done up to that time, and he is to have no further claim; and all material, prepared ■or unprepared, which may be upon the premises, shall become the property of the city, without further payment.
These provisions might be said to be stringent in their nature, and it was evidently the purpose of the board to-retain full control in their own hands, and to place the contractor in such a position as that he should always be in their power, and doubtless this was the part of wisdom.
• The relations of the parties being such as are herein indicated, when the first departure from the original plan was made, Cameron refused to do the work unless under a written oi’der. Mr. Bate, assistant superintendent, told him that no written orders were given to any of the contractors, and that written orders had been abandoned. He still demurred, saying that the contract called for a written order, and he must have it. He then appealed to Dr. Quinn, a prominent member of the board, and who appeared to have the direction of affairs rather more perhaps than any other. Hr. Quinn told him that they gave no *373 written orders for changes, and all he had to do was to follow the directions of Bate and Nash, the architect, and the board would pay him.
Cameron is not contradicted in this statement; upon the •contrary, he is corroborated. Dr. Quinn says Cameron spoke to him on the subject of alterations, and was told to carry out the orders of the architect. He further states that no written orders were given, and alterations were paid for without objection on account of the want of written orders. He says it was not the custom to give written ■orders, and he did not know of any being given. The matter was considered by the board, and not deemed necessary. Without going into the testimony at length, we .are satisfied that they simply abandoned that clause of the contract, and that no attention whatever was paid to it, and although there were many changes by the various contractors, it does not appear that a written order was given in any case.
In the next place all these additions, alterations, or changes from the original plans were made known to the board and authorized by it. Mr. Carlisle, member of the board and chairman of the building committee, says so in so many words. Cameron says he did nothing about the building but what he was directed to do, and Nash says it was all done under the supervision of himself and Mr. Bate. Nash says the board met twice a month, and thereat he gave a full history of what was being done, and full consultations were had; that when he made changes or .alterations, he had the authority of the board or building committee for so doing, and he can remember of no instance where Cameron did work outside of his contract, when he did not have the authority of Bate, himself, or the furniture committee.
In the next place, all the work done by Cameron was good and satisfactory; so says the architect. Mr. Carlisle .says no complaints were made by'the board'on account of materials or workmanship. Bate says the character of the work and materials was fully up to the specifications.
*374 And, lastly, the city has received and is enjoying the benefit of the work. We are fully aware of the difficulty and delicacy of applying the doctrine of estoppel on the ground of the city having had the consideration. It is by no means true that because a corporation accepts and makes' use of the work done, that therefore it is estopped. The circumstances may be such that it can not help itself. A railroad can not forego the use of its entire track, because-it has a dispute with some contractor about extras in some bridge. In such case the argument that the company has accepted and used the work has no force whatever. Upon this ground the doctrine of estoppel only applies in those cases where the corporation may accept or reject with equal convenience. Zottman v. City of San Francisco, 20 Cal. 97;: Smith v. Brady, 17 N. Y. 173; Ellis v. Hamlen, 3 Taunt. 52; Bartholomew v. Jackson, 20 Johns. 28.
While, therefore, it might not be sufficient to base a recovery upon the sole ground that the city had received the benefits and therefore could not refuse the payment, the-other circumstances showing the justice of the plaintiff’s-claim, are strengthened by the fact that he has given a quid pro-quo.
We desire further to say that the remarks heretofore made upon the heads “limit of expenditures” and “ written orders,” are to be regarded as applying strictly to-the case in hand,. The authorities on the subject of municipal liability, when and how the body may be bound,, what its extent of authority is, under what circumstances it may deny, are not at all uniform. A remark as apposite as any we have happened to meet, is that of Field, C. J., in Argenti v. San Francisco, 16 Cal. 283 : “ Upon the general subject of the extent of the liability of a municipal-corporation, the authorities are a tangled web of contradictions, and it is difficult to assert any proposition with respect to the same, for which adjudications on both sides may not be cited.”
Therefore it is that words should be restrained unto the “ fitness of the matter.”
*375 It is easy to conceive a case where the extent of an appropriation may limit the extent of municipal action, and mar.j such may be found in the books. If the charter of a corporation says it can only act by writing, often it will be, as it has been, that a party can not recover upon a mere verbal agreement. All we mean to say in this ease is, and it seems to be all that is necessary to the determination of the controversy, this: If the law makes a specific appropriation, which is claimed to measure the extent of corporate power, when a contract has been made which is within bounds and therefore valid, it can not be invalidated by subsequent action of the corporate authorities in concluding other contracts, the aggregate of which is in excess of the appropriation.
And though the law requires directions to the contractor to be iu writing, if the contractor solicits such writings, but the board dispenses with them as unnecessary, and otherwise directs work to be done, and work is done, as to payment for which no question exists, except the want of written authority, this is not sufficient ground of defense.

Judgment affirmed.

After the decision of the cause was announced and judgment entered, a motion for rehearing, was made in this cause, the city seeking to advance what it states to be new points.
A rehearing will not be allowed simply to assign new errors which were not assigned upon the original bearing. It is desirable that litigation should have an end, and that end is generally reached when the cause has been heard, fully considered, and finally decided. It is, however, proper to say that the points made in the motion were presented in the original briefs, and not overlooked by the court.

Motion overruled.