Nott, Oh. J.,
delivered the opinion of the court:
This is a motion on the part of the defendants to dismiss for want of jurisdiction. The ground of the motion is that the property was not taken for use and that the action presents a *346 case of damage and. destruction to property by the naval and military forces of the United States during the war of the rebellion, coming within the jurisdictional inhibition of the third section of the Bowman Act.
It appears by the motion papers that the schooner Zephaniah was impressed by General Burnside at Roanoke Island, February 28, 1862; that she was afterwards taken by the military authorities to Newbern, and that she was ultimately sunk in the ISTeuse River by order of General Palmer for blockade purposes in March, 1864.
A number of decisions in this court are relied upon to sustain the motion: Madison Female Institute Case (23 O. Gis. R., 188); Brown’s Gase (29 id., 394); Beasley’s Gase (21 id., 225); Beflebower’s Gase (21 id., 228,238); Gonnard’s Gase (25 id., 433); Myer’s Gase (22 id., 80); Nelson’s Gase (22 id., 159).
The distinction between property taken for usé or for destruction is one of fact. The purpose of destruction, when it is intentional and not incidental, is to make away with a thing— to annihilate it; to cause a condition of affairs such as if the property did not exist. A forest felled so as to extend the range of guns; a wheat field fired to prevent the wheat from falling into the hands of the enemy; a mill burned that the flour which it contains shall not come into the possession of the enemy’s commissariat, are illustrations. Waiving in this case the fact that an interval of nearly two years existed between the impressment of the vessel and her so-called destruction, during which period a user must be inferred, it seems to the court plain that the vessel was not sunk in the Neuse River for the mere purpose of destroying her. She was utilized. She was a substitute for timber, which might otherwise have been bought and paid for, or for stone, or for a chain stretched across the channel.
In ordinary cases coming under the general jurisdiction of the court where private property is taken for public use, an action on the implied contract can be maintained. In cases of implied contract, it was established by the decision of the Supreme Court in Salomon’s Gase (19 Wall., p. 17) that where private property was delivered to an officer for public use a contract will be implied though the property was not used, and the Government received no benefit from it. As a general principle, it may be said that where private property is taken *347 for public use under conditions which will authorize a court to hold it a case of implied contract, the title passes to the Government, eo instanti, and it is no concern of the owner as to what use or purpose the Government puts it or whether the property perishes in its hands.
Another distinction between, property taken and property destroyed is that the one is the result of official selection and the other is the result of the chances of war.' A field of wheat trampled down in a battle is destruction, literally incidental to military operations ; a field of wheat burned to prevent its falling into the hands of the enemy, though the destruction be deliberately ordered, is equally incidental, for the necessity of its destruction depends likewise on one of the chances of war, the nearness of the enemy. When an army halts for the night and tramples down the crops on the farm where it encamps it is destruction incidental to Avar5 but where a quartermaster selects and retains a farm because of its peculiar fitness for a military encampment it is a taking for the use of the Government. The losses of war are to be borne by him upon whom they fall; but that is to be determined by the chances of war. A citizen is not subject both to the chances of war and to the selection of official authority. As was said long ago in Lindsley’s Case, (4 O. Cls. E., 359), the jurisdiction of this court can not be made to depend upon the form of a transaction nor upon the will or caprice of the officer procuring the property.” Where the taking or occupation or destruction was voluntary and the result of choice superinduced by no overruling military necessity, it is not a case of military destruction within the intent of the statute (Hejlebower's Case, 21 id, 228, 238).
In this case now before the court there may have been a dozen vessels at the dock at Neivbern equally adapted to the purpose of obstructing the channel; and if this one was taken and the others left it was a matter of official selection. It is not for an administrative or military officer to say that one citizen shall bear the whole of such a burden without reparation and that another shall go free. There was no overruling necessity to take this particular vessel. Again, there may have been timber upon the wharf with which to make cribs, and stone with which to sink them in the channel. If so, the only question for the officer to decide was which would serve the purposes of the Government the better, the vessel or the *348 timber and stone. When that was decided the taking became the taking of property for the use of the Government.
The taking of stores and supplies for the use of the Army, contenrplated by the Bowman Act, is analogous to the taking of private property for public use contemplated by the Constitution. And the provisions in the Bowman Act, which inhibit jurisdiction of cases where the injury to the party resulted from the destruction of property in military operations, are analogous to the provision in the Tucker Act, which inhibits jurisdiction of cases sounding in tort. In cases coming within the general jurisdiction of the court there is an obligation to pay a “just compensation” which can not be questioned; and the statute which created the court provided a remedy in the form of an action on an implied contract wherein there may be a recovery in quantum, meruit. In the other class of cases the taking was in time of war in enemy’s territory and from persons who in contemplation of law were public enemies. With such no contract can be implied. But when the loyalty of the owner is established the legislativo branch of the Government regards the party as one who was not an enemy, though in enemy’s territory, and does voluntarily what it. does in the other class of cases under the mandate of the Constitution and the pressure of a judgment, it pays for the property taken.
The order of the court is that the defendants’ motion be overruled.