## Citizens State Bank of Greenup v. Johnson County.

(Decided June 23, 1922.)

### Appeal from Johnson Circuit Court

1.   Counties—Bonds—Negotiable Instruments—Bond Paid and Canceled not Valid in the Hands of a Bona Fide Purchaser for Value.— Where a bond issued by a county was paid and cancelled, it ceased to be a legal obligation, and the removal of the cancellation marks did not restore its validity even in the hands of a bona fide purchaser for value.

2.   Appeal and Error—Appellant cannot Complain of Error in his Favor.—Where an error in the instructions is favorable to appellant, he cannot complain thereof.

A. D. COLE, H. W. COLE and KIRK & KIRK for appellant.

VAUGHAN & HOWES for appellee.

Opinion of the Court by Judge Clay—Affirming.

This is the second appeal of this case.   The opinion on the former appeal may be found in 182 Ky. 531, 207 S. W. 8, where the facts are fully set forth.

The suit was brought to recover on a $500.00 bond purporting to have been issued by Johnson county.   In addition to the defense that the bank acquired title with knowledge of the infirmities in the bond, the county pleaded payment and cancellation.   The first trial resulted in a verdict and judgment for the county.   On the appeal it was held that the bank was a *bona fide* pur-

chaser, and that, under the facts then appearing, it was entitled to a directed verdict.

On the return of the case the bank introduced evidence to the effect that it was a *bona fide* purchaser, while the county introduced evidence tending to show that the bond in question was paid and cancelled by writing red lines across it, but was subsequently stolen and the marks of cancellation erased. In addition to instructions defining negligence and authorizing a verdict by nine or more of the jury, the court gave the following instructions:

1. "The court instructs the jury that they will find for the plaintiff the sum of five hundred dollars with interest thereon at the rate of six per cent per annum, payable semi-annually from the 14th day of November, 1904, until paid, unless they should believe and find from the evidence that the bond and coupons sued on had been paid and cancelled upon their face in ink by the defendant county before the plaintiff purchased the said bond from L. B. Caudill, in which latter event they will find for the defendant, unless they believe and find as in instruction number two.

2. "Although the jury may believe from the evidence that before the bond in question got into the hands of plaintiff bank as an innocent purchaser for value before maturity, said bond was paid by defendant, and marks of red ink placed upon it, yet if they further believe from the evidence that said bond was sealed with the seal of Johnson county and signed by its county judge, J. K. Dixon, and its county clerk, George C. Perry, and carelessly and negligently suffered by said county to be removed from its archives and to be put again into circulation, they will find for the plaintiff the sum of five hundred dollars, with interest thereon at the rate of six per cent per annum, payable semi-annually from the 14th day of November, 1904, until paid.

"Unless they so believe and find they will find for the defendant."

The jury again found for the county and the bank appeals.

The bank insists that it was entitled to a peremptory instruction and relies on the case of Ehrlich v. Jennings, 78 S. C. 269, 13 Am. & E. Ann. Cases, 1166, where it was held that a bond of the state of South Carolina, which had been stolen from the treasury vault after it was paid but not cancelled, was invalid in the hands of an innocent

purchaser. In the first place the authorities are not in accord even on the question there presented. In the case of Branch v. Commissioners of Sinking Fund, 80 Va. 427, 56 Am. Rep. 596, there was an application for a writ of mandamus to compel the commissioners of the sinking fund to fund certain bonds in the state of Virginia which had been redeemed but were afterwards stolen from the treasury of the state and purchased *bona fide* for value and without notice on the part of the petitioner that they had been stolen. In refusing the writ of mandamus the court said:

"We are of opinion that after these bonds with their appurtenances had been redeemed by the state, and taken into her possession and custody, they ceased to be her obligations; and could not again become such unless she voluntarily redelivered or reissued them. They had run their career and fulfilled their mission, and had returned to the dusty depository of dead matter in the treasury; and they had been substituted by outstanding equivalents which represent the legal and moral obligations of the state. They had no longer any legal inception or existence as the bonds of the state, and they were and are as though they never had been; and their vitality could never be restored without intentional and voluntary redelivery by the state; certainly they could not be resurrected to the righteous judgment of a court of justice by robbery or theft."

In the next place the Ehrlich case is not controlling because the bond there involved was never cancelled.

If, as a matter of fact, the bond in question was not only paid but was also cancelled, then we think the case falls within the rule announced in the case of District of Columbia v. Cornell, 130 U. S. 1041, 32 L. Ed. 655. There, the Board of Public Works of the district issued certain sewer certificates, each payable to bearer and for a sum certain. After the certificates were redeemed and canceled they were stolen by a clerk in the employ of the Board of Public Works. By the use of detersive soap, the clerk entirely removed from a large portion of the certificates the marks of cancellation. From other certificates, on which some ink marks still appeared, he cut off some coupons and pasted them over the partially effaced marks. In this condition no signs or marks of cancellation or redemption were visible on the certificates, but some of them still had a soiled or stained appearance.

The stolen certificates were sold by the clerk to brokers in Washington, and by them to one, Ritchie, and by him to the claimant. All the purchasers bought them for value, in good faith and without notice that they had been redeemed or cancelled. Cornell recovered in the court of claims, but on appeal to the supreme court the judgment was reversed. In disposing of the case, the court, speaking through Mr. Justice Gray, used the following language:

"When the maker of negotiable instrument lawfully cancels it before maturity, his liability upon it is extinguished, and cannot be revived without his consent. It is immaterial whether the cancellation is by destroying the instrument or by writing or stamping words or lines in ink upon its face, provided the instrument, in the condition in which he puts it, unequivocally shows that it has been cancelled. Scholey v. Ramsbottom, 2 Camp. 485; Burbridge v. Manners, 3 Camp. 193; Ingham v. Primrose, 7 C. B. N. S. 82, 86; Yglesias v. Mercantile Bank, L. R. 3 C. P. Div. 60. . . .

"These certificates having been lawfully extinguished by stamping across their face marks of cancellation as clear and permanent as the original signatures, the liability of the district upon them as negotiable paper could not be revived by its commission to take additional precautions against their being stolen and fraudulently restored to their original condition by such means as ingenious wickedness might devise.

"Moreover, these certificates were in no sense money or the equivalent of money. Though negotiable instruments, they belonged to a peculiar class of such instruments, being made by a municipal corporation, and having no validity unless issued for a purpose authorized by law, and as to which this court has repeatedly laid down and acted on the following rule: 'Vouchers for money due, certificates of indebtedness for services rendered, or for property furnished for the use of the city, orders or drafts drawn by one city officer upon another, or any other device of the kind, used for liquidating the amounts legitimately due to public creditors, are of course necessary instruments for carrying on the machinery of municipal administration, and for anticipating the collection of taxes. But to invest such documents with the character and incidents of commercial paper, so as to render them in the hands of *bona fide* holders absolute obligations to pay, however irregularly or fraudu-

lently issued, is an abuse of their true character and purpose.' Nashville v. Ray, 86 U. S. 19 Wall. 468, 477 (22: 164, 169); Wall v. Monroe County, 103 U. S. 74, 78 (26: 430, 432); Claiborne County v. Brooks, 111 U. S. 400, 408 (28:470, 473.)

"Considering the nature of these certificates, the method in which they had been cancelled, and the means by which they were afterwards put in circulation, we are of opinion that there is no ground for holding the District of Columbia liable to this claimant."

But appellant insists that the above case is distinguished from the case at bar in that the certificates there involved were not on a par as to negotiability with the bond in question. We do not regard that fact as material. Being a municipal obligation, the bond could only be issued under authority of law though issued under authority of law in the first instance, yet if it was paid and cancelled, it ceased to be a legal obligation, and the removal of the cancellation marks did not restore its validity, even in the hands of a *bona fide* purchaser for value.

Whether or not instruction No. 2, presenting the question of estoppel, should have been given, we deem it unnecessary to decide, as the error, if any, was in favor of appellant, and he cannot complain thereof.

Judgment affirmed.