Bichaedson, J.,
delivered the opinion of the court:
The claimant had two written contracts with the Post-Office Department for transporting mails in New York City, between the post-office and certain railway stations, one covering the period from July 1, 1877, to June 30, 1881, and the other from the latter date to June 30, 1885.
For all service under each contract he was to be paid a gross sum per year ; under the first contract $57,900 and under the second $63,200, payable quarterly. He has been so paid, and he makes no claim for service performed under either contract.
The action is brought to recover for extra service, or other and different service from that described in his contracts, according to the allegations of his petition. On the part of the defendants it is contended that all the service performed by claimant came within the terms of his contracts, and so has been paid for in full.
Among the mails transported by the claimant was the Australian closed mail, a mail made up in England, shipped to New York, delivered at the New York post-office, taken charge of there by the post-office authorities, and forwarded by them in the unopened bags'as received to San Francisco for shipment to Australia, and also the return mail shipped and transported in like manner from Australia to England. The whole care, custody, and duties in relation to said mails while in this country are with the post-office authorities here, and the British Government has no supervision over them. The cost of transportation through this country is paid by the United States as all their other mail transportation is paid, and is repaid by the British Government under the provisions of a postal convention between the parties. (20 Stat. L., 699, modifying a former one, 19 Stat. L., 581.)
The case has been argued as though the words “the mail of the United States” had but one, and that a technical and limited, signification.
But words and phrases are often used in a broad as well as in a narrow sense.
If we had nothing to guide us in the construction of these contracts except the words relied upon by the claimant, we are not prepared to say that we should not hold that the Austra *472 lian mail, while it is in the custody of the United States postal authorities in transit through the country, is part of the mail of the United States within the meaning of the contracting parties. It certainly is so within the general, ordinary, and popular use of the words as they would naturally be applied in all matters relating to the handling and transportation of the unopened bags. It is only in the classification of the mails for opening, distribution, and the internal arrangements of the post-offices and the Post-Office Department that they are called Australian mails. The generic term, the mail of the United States, may well be held to include all mail matter, whether in sealed or unsealed and unopened bags, which passes through the United States post-offices and is under the control of the United States postal authorities.
We are not called upon, however, to determine the meaning of the isolated words, “the mail of the United States.” The question is, what service did the parties intend to contract for by the use of that and other terms of their agreement, taken together.
In seeking to ascertain the intention of the parties to a written contract, the whole tenor of the instrument, the object apparently in view, as disclosed by the language of its different parts, the surrounding circumstances under which it was entered into, and any action of the parties themselves in relation thereto, acquiesced in on the one side and the other without objection or question, may be taken into consideration.
Chittj says: “Every contract is to be construed with reference to its object, and the whole of its terms; and accordingly the whole context must be considered in endeavoring to collect the intention of the parties, even although the immediate object of inquiry be the meaning of an isolated clause.” (1 Chitty on Contracts, 11 Amer. ed., 117.)
■ 1. As to the object in view and the circumstances under which these contracts were made.
It cannot be doubted that the object of the post-office authorities was to make a contract for the transfer of all matter which was to be sent to and fro between the New York post-office and the railway stations. The statute law requires all such service to be contracted for only upon public notice inviting proposals, and the Postmaster-General has no authority to *473 contract in any other way except in an emergency. (Bevised Statutes, section 3709.) It is not reasonable to suppose that when proposals were invited, as the law required, and these contracts were made it was the object of either party to contract for only part of local transfer service which would have to be performed, leaving another part entirely unprovided for; that the mail-bags at the stations were to be sorted, and all those belonging to the Australian closed mail were to be taken, out and transported by some other conveyance. The very fact that no provision was otherwise made for the transfer of the Australian closed mail, and that the contractor immediately preceding the claimant had carried it under similar contracts plainly indicates that it was part of the general United States mail service which both parties had in view when they entered into their agreements.
2. As to the whole tenor of the advertisements for proposals and the contracts. The claimant relies upon the isolated words “ mail of the United States,” used once in each proposal and in each contract. But there are several other passages and phrases and provisions found therein, which explain the meaning of that expression, as intended by the parties.
The first advertisement contained the following notice:
“ The accepted bidder under this advertisement will be required to perform, without additional compensation, any and all new or additional service that may become necessary during the term of the contract, whether to and between depots and landings now established, or those which may be hereafter established.
“Bids must be made with this distinct understanding, and must name the amount per annum for the whole service, and not by the trip.
“ There will be no diminution of compensation on account of the discontinuance of such portions of the service as may become unnecessary during the contract term; but deductions will be made for neglect of duty. * * *
“The transfer service to include the conveyance of all case of post-office supplies arriving for transit through the city.”
The second advertisement contained the following:
“The following schedules show the mail messenger, mail station, and transfer service as nearly as can be stated, but bidders must inform themselves of the amount and character of the service, and the accepted bidder under this advertisement will be required to perform, without additional compensation, any and all new or additional service not herein men *474 tioned that may be necessary when his contract goes into operation, or that may become necessary during the term of the contract, whether to and between depots or landings now established or those which may be hereafter established.
“ Bids must be made with this distinct understanding, and must name the amount per annum for the whole service, and not by the trip.
“ There will be no diminution of compensation on account of the discontinuance of such portions of the service as may become unnecessary during the contract term, but deductions- . will be made for neglect of duty. * *
“ All new or additional service will be performed on a schedule of time arranged by the postmaster of New York.”
Bach contract refers to the service as “ the mail messenger service at the city of New York,” and each contains the following provisions:
“It is hereby stipulated and agreed that the Postmaster-General may, if it be required by the public interests, order new or additional service which may become necessary to be performed, which shall be performed without additional compensation. * *
“ All new or additional service will be performed on a schedule of time arranged by the postmaster at New York.”
The first contract contained also the following:
“ The transfer service to include the conveyance of all cases of post-office supplies arriving for transit through the city.
“ Bach and every transfer to be made as often as may be required by the Postmaster-General; the transfer service to include the conveyance of all cases of post-office supplies arriving for transit through the city; and will do and perform all other mail messenger and transfer service now being performed in the said city of New York, and any and all new or additional mail messenger or transfer service in the said city, whether to and between depots and landings now established and those, which may hereafter be established, which may become necessary and be required by the Postmaster-General during the time of this contract, without additional compensation; said service to be performed at such hours of arrival and departure at and from the above-designated points or places, or those which may hereafter be established, as the postmaster at New York City may order and direct.”
These extracts, we think, are sufficient to show that the parties intended to include, and did include, in the service to be performed, transportation of all mail matter which it became the duty of the postmaster at New York to have transported between the post-office there and the railroad stations named.
*475 The transfer of the Australian closed mail must be held to. be included in such service, whether it comes under the words-“the mail of the United States,” or the words “any and all new or additional service that may become necessary during, the term of the contract,” or “any and all new or additional service, not herein mentioned, that may be necessary when this contract goes into operation,” or “the mail messenger service of the city of New York,” or “.new or additional service which may become necessary to be performed,” or “any and all new or additional mail messenger or transfer service in the said-city,” expressions which are found in the proposals and contracts, and which seem conclusively to show that the parties-did not intend to contract for part only of the service which was within the duty of the post-office authorities to provide-for.
3. The claimant knew or was bound by the very terms of his contract to know, what was the character of the service which would be required of him.
The first contract expressly required him to perform “ all other mail messenger and transfer service now being performed in said city of New York” and this Australian mail transfer service was then being performed there. The advertisement for proposals, under which the second contract was made, provided that “ bidders must inform themselves of the* amount and character of the service.”
Yet, thus knowing, or beingbound to know, that the Australian closed mail was included in the transfer service required to be provided for by the post-office authorities, and was actually being performed when he entered into his first contract, he carried that mail for more than five years without protest, objection, or question as to its being within the terms of his contract, received it as he did other mail-matter, never notified the post-office authorities that he should claim extra compensation, therefor, and regularly every quarter, we may presume, received his pay under the contract at contract price, without demand-, ing anything more. (Merriam’s Case, 14 C. Cls. R., 289; Gibbon's Case, 15 C. Cls. R., 202.)
In every view of the case we are led to the conclusion that the claimant is not entitled to recover, and his petition must be dismissed.