Richardson, J.,
delivered the opinion of the court:
By section 1 of the Act of March 3, 1873, oh. 231 (now Revised Statutes, § 4002), Congress directed the Postmaster-General to readjust the compensation thereafter to be paid for the transportation of mails on railroad routes, not to exceed certain rates, according to distances and weight, to be ascertained not less frequently than once in every four years, as therein specified.
Thereafter, by written contracts between the parties, one of which is set out in finding I as a form of all of them, dated March 31, 1874, but not executed until September 28, 1874, the claimant corporation, with two sureties, agreed to carry the mails over the thirteen routes mentioned in the petition, at the prices and upon the terms therein specified, for a period of three and a half years, from July 1, 1874, to June 30, 1877.
By the Act of July 12, 1876, ch. 179 (1 Supplement to Rev. Sfcat., 226, and 19 Stat. L., 78), Congress authorized and directed the Postmaster-General to readjust the compensation to be paid from and after July 1, 1876, to all railroad companies for the transportation of mails 10 per cent, per annum from the rates fixed and allowed by the previous statute.
Some time during the latter part of the year 1876 or the first part of the year 1877, aud before the expiration of said written contract, the Post-Office Department, by the usual distance and weight circulars set out in finding II, called upon the claimant for the information necessary to the readjustment of compensation in the manner required by law. This information was duly furnished.
*39 On the 20th of December, 1877, the Postmaster-General readjusted the compensation to be paid the claimant from July 1, 1877 (the day following the expiration of the written contract), fixing the amount at the maximum authorized by Revised Statutes, § 4002, reduced 10 per cent, by the Aot of July 12,1876 (Supplement to Rev. Stats., 225). He thereupon issued to the Sixth Auditor an order, and gave the claimant notice in the following form:
“ Authorize the Auditor of the Treasury for the Post-Office Department to pay the Eastern Railroad Company, quarterly, for carrying the mail between-and-, from July 1, 1877, to June 30, 1881, at the rate of $-per annum (being $-per mile per annum), unless otherwise ordered, subject to fines and deductions.
“ Brady.
“ Deo. 20, 1877.”
Of this order notice was immediately given to the claimant, as follows :
“ Post-Oeeioe Department,
“ Oeeice oe the Second Assistant Postmaster-General,
“ Washington, D. G., Deo. 20, 1877.
“ Sir : The compensation for the transportation of mails, &c., on your road, route-, between-, has been fixed from July 1,1877, to June 30, 1881, (unless otherwise ordered), under acts of March 3,1873, July 12, 1870, upon returns showing the amount and character of the service for thirty days commencing April 16, 1877. at the rate of $-per annum, being $-per mile for-miles.
“ Very respectfully, &o.,
“ Thos. J. Brady,
“ Second Assistant Postmaster- General.
■“ To John Hornby, Esq.,

"Master of Transportation Pastern R. R. Go.,

“ Boston, Mass.”
Although the Act of July, 1876, required the compensation under the readjustment and reduction of 10 per cent, to be from and after July 1, 1876, the claimant was paid the unreduced rates according to the terms of the written contracts until June 30, 1877, when the contracts expired by their own limitation, and there is no controversy in relation to such payment.
Nor is there any controversy as to payment for the service *40 for the next succeeding year from July 1,1877, to June 30,1878, which was made in accordance with the order of December 20, 1877.
But Congress, on the 17th of June, 1878, having authorized and directed the Postmaster-General to readjust the compensation to be paid from and after July 1,1878, for transportation of mails on railroad routes by reducing the same 5 per cent, per annum from the rates allowed by the previously existing laws, the Postmaster-General gave orders of reduction accordingly for each of the routes, in the following form, under date of July 12, 1878:
“ Authorize the Auditor to decrease the pay of the Eastern Railroad Company for carrying the mails between-and -from July 1,1878, to Juue 30,1881, at the rate of $- per annum, leaving the pay from that date $-per annum (being $-per mile), being a reduction of five per centum from the rates fixed for weight of mails in accordance with the act of June 17,1878.
“ FRENCH.
“ Juey 12,1878.”
Theclaimant was immediately notified of this order, as set out in finding V, and was regularly paid in accordance with its terms from July 1, 1878, to June 30, 1881, without protest or objection until this action was brought in 1883, so far as it appears by the findings.
The claimant now denies the right of the Postmaster-General to make the 5.per cent, deduction from the previously established rates for its service during the three years from July 1, 1878, insisting that at the time of the passage of the act of
1878, and the Postmaster-General’s order thereunder, it had a contract at the former rates which did not expire until June 30, 1881, and which was not and could not be affected by said act and order, and this action is brought to recover the amount of deduction made thereby.
The cases of the Chicago and Northwestern Railway Company and the Chicago, Milwaukee and, Saint Paul Railroad Company v. The United States (101 U. S. R., 680, 687) are relied upon as authoritatively settling the law that the reduction acts of 1876 and 1878 were not intended to and did not apply to previously existing time contracts which had not expired when the acts were passed, and this is unquestionably so.
*41 The only question of law involved in the ease is, therefore, whether or not the parties were under contract in relation to mail transportation over these routes to June 30, 1881, as alleged by the claimant and denied by the defendants.
Two distinct views are presented on behalf of the claimant, both leading to the same result.
1. It is urged that when, on the 1st day of July, 1877, the railroad company entered upon the service of carrying the mails furnished by the Post-Office Department, an implied contract arose between the parties that the service should be continued for the term of four years at the rates alleged to have been established and fixed by the Act of March 3, 1873, ch. 231, § 1 (17 Stat. L., 558, and Revised Statutes, § 4002), as amended by the act of 1870, July 12, § 1 (Supplement to Rev. Stat., 224, and 19 Stat. L., 79), independently of any other action of the Postmaster-General than that of ascertaining the weights and distances mentioned in the statutes.
This view is founded upon the theory that it is to be presumed from the nature of the service, and is a proper inference from the language of the acts of Congress. In this we cannot concur.
Section 4002 of the Revised Statutes, from the act of 1873, does not establish an absolute rate of compensation, necessarily alike to all railroads, for mail transportation, but fixes máxi-mums which are not to be exceeded, leaving the Postmaster.General a discretion to make contracts at less rates if he should be able to do so. On that point the language of the section is clear — “the pay per mile shall not exceed the following rates.” It is urged that this language is controlled by the preceding words of the section, “The Postmaster-General is authorized and directed to readjust the compensation hereafter to be paid for the transportation of mails on railroad routes upon the conditions and at the rates hereinafter mentioned.” In our opinion the rates there referred to are any rates which the Postmaster-General may contract for, notexceeding those thereinafter mentioned.
While the statutes more than imply that the Postmaster-General may make contracts for carrying the mails, they nowhere require such contracts to be for any specific term of time. At most they only prohibit the making of them for more than four years, or other less periods in special cases. (Revised *42 Statutes, §§ 3970, 3943.) That it is not the uniform practice of the Post-Office Department to make four years’ contracts with railroad companies is shown by the fact that the written contracts of the claimant, which expired just before the time to which the present controversy relates, as set out in finding I, were for three and a half years.
The time-contract system contemplated by the statutes, while it leaves much to the discretion of the department, is put under many regulations, as to advertising for proposals and other matters, one of the most important of which, if not expressly declared is so recited and implied as perhaps to be obligatory, is the requiring of sureties for the performance of the obligations of contractors. (Rev. Stat., §§ 3945, 3940, 3947, 3951.)
Section 3942 and the previous acts from which that section was drawn relieve the Postmaster-G-eneral from the duty of advertising for bids when entering into time contracts with railway companies, but in other respects the general statutes apply to railroad companies and other contractors alike.
Whether or not since the passage of that law the department has made anytime contracts with railway companies without sureties we are not informed, but it apiiears by finding I that the time contracts of the present claimant with the Post•master-G-eneral, up to the period to which the present controversy relates, were in writing, and with sureties for the faithful performance of its obligations.
When, therefore, on and after July 1, 1877, the claimant went on performing mail-transportation service like that provided for by the terms of the time contracts, with sureties, which had expired the day previous, we do not think that an implied contract arose by which the Postmaster-General agreed to employ the claimant without sureties, for the term of four years or for any other period of time. Such an implication would be inconsistent with the spirit, if not the language, of the statutes, and with the practice of the department in putting time contracts in writing and requiring sureties from the contractors for the faithful performance of their obligations.
Much reliance on the part of the claimant is placed upon the opinion of the Supreme Court in the case of Railway Company v. United States (101 U. S. R., 543). But in that case no question was involved as to whether or not there was a contract for a definite period of time! That action was brought by the United *43 Sta tes against a railroad company to recover a tax imposed by statute on “every * * * corporation owning * * * any railroad * * * engaged or employed in * * * transporting the mails * * * upon contracts made prior to August 1, 1866.” The court say :
“ No express contractfor carrying the mails was proven, but •since the service for which the compensation was paid began before August 1, and was continued without interruption for the whole term in question, the court below implied a contract prior to that time. This, we think, was right. Had payment been refused and suit brought against the United States in the Court of Claims to recover for the service rendered, there could be no doubt about the right to recover, notwithstanding the jurisdiction of that court is confined to suits on contracts (Salomon v. United States, 19 Wall., 17); and this not alone because the service had been rendered, but because it is to be presumed that when the company commenced the transportation it had been agreed that payment should be made for what was done?
So in this case it is to be presumed that when the company 'commenced the transportation of the mails, July 1, 1877, it had been agreed that payment should be made for what was done and nothing more. So long as the Postmaster-General furnished the mails and the claimant continued to carry them an implied contract existed, which might be terminated at any time by either party. The implied compensation was the reasonable worth of the service, and that might be measured by the previous dealings of the parties for like service and the statutes regulating the same. The maximum rate fixed by statute would no doubt be considered the reasonable and implied compensation until the Postmaster-General should make other terms, with the concurrence, express or implied, of the claimant.
On the 12th of July, 1878, the Postmaster-General ordered a reduction to be made for service after the first of that month of 5 per cent, from the rates previously paid, in accordance with an act of Congress passed June 17, 1878 (Supplement to R. S., 359). Immediate notice of this order was given to the claimant, and no objection was made to it. This order and notice constituted an offer on the part of the Postmaster-General, which the claimant might decline or accept at its pleasure. Having thereafter continued the service for three years and received the reduced compen sation without objection, the company must be held to have accepted the offer of the Post *44 master-General modifying the previously existing implied contract relations between them.
2. Another view urged for the claimant is that the order of the Postmaster-General to the Sixth Auditor of December 20r 1877, with notice thereof to the claimant on the same day, accepted and acted upon • by the latter, constituted a written contract for four years from July 1, 1877, to June 30, 1881, binding on both parties. But this is refuted by the language of both the order and notice, wherein, although that period of time is mentioned, it is followed by the significant qualifying words “unless otherwise ordered.” It is evident from this phraseology that it was contemplated that the Postmaster-General might deem it proper to make changes in the order, either by reducing the compensation below the maximum authorized by statute or otherwise modifying it, and full power was thus reserved for him to do so. It is insisted on behalf of the claimant that the words “unless otherwise ordered” were intended to apply only to the results of reweighing the mails, which might be ordered as frequently as the Postmaster-General chose to so direct, and which, under the statute, might necessitate a change in the amount of compensation. But we find no such limitation or restriction in either the order or notice. In the one the words are placed near the end of the order, followed only by the expression “ subject to fines and deductions,” and in the other, the notice, they stand immediately after the specification of time. In both we think that they apply to all the terms of the written papers.
When the Postmaster-General, on the 12th of July, 1878, ordered and gave notice of the proposed reduced rate, as required by the act of June 17, 1878 (Supplement to R. S., 359), he did only what he had a right to do by the power reserved to him in his previous papers. In this the claimant silently acquiesced, submitted to it without objection for nearly two years after the whole service had been performed and paid for at the reduced rate.
On the authority of the Chicago and Northwestern Railway Company v. United States (104 U. S. R., 680) it is insisted that the continuance of service without protest or objection by the claimant after notice of the proposed reduction has no bearing on the rights of the parties. We do not think the decision of that case applies to the present controversy. There was a *45 written unexpired time contract between the parties, and neither its existence nor the meaning of its terms was in dispute. The only question at issue was whether Congress and the Postmaster-General had the power, under the statute, arbitrarily to reduce the compensation before the expiration of the term of the contract. The Postmaster-General, by direction of Congress, notified the company of such reduction, and the latter continued to perform the service thereafter without objection. The court held that, the company being bound by contract to perform the service until the end of the term, a continuance of such performance after receipt of the notice of reduction was no admission of the validity of the Postmaster-G-eneral’s wrongful act and no acquiescence therein, but was merely performance of its contract obligations, for which it was entitled to the contract compensation. The force and effect of a law of Congress was in controversy, and that was not to be determined by acts of the claimant which were performed in compliance with its contract obligations, and not necessarily in acquiescence of the Postmaster-General’s order.
Here the contract relations of the parties are in dispute, and the effect of the statute is not in controversy. The only question involved in this case is whether or not there existed a time contract at all, either by implication or by the proper construction of written papers.
When the extent of an implied contract or the meaning of the language of a written contract are in controversy, the intention of the parties becomes all important. Their acts at the beginning and during the term of the contract, acquiesced in on both sides, the claims and construction set up by one party and not denied by the other, go very far to explain, if they do not actually establish by way of estoppel, the actual contract between them as well as its proper interpretation. (Otis v. The United States, 19 C. Cls. R., 467.)
The present claimant having no clear and definite time contract was bound to take notice of the Postmaster-General’s offer of future compensation, and its acts at the time amount to an acceptance of his offer.
The judgment of the court is that the claimant has no cause of action, and the petition must be dismissed.
Deaee, Ch. J., sat in this case, but took no part in the decision.