Richardson, Ch. J.,
delivered the opinion of the court:
The claimant entered into a written contract wherein it was agreed that he should provide and furnish to the defendants, whenever called upon during the fiscal year ending. June 30, 1887, such vessels, of the description specified, as might be required to take the.place of other vessels then performing service for the United States Army between New York City and Governor’s Island; and that the vessels furnished should be staunch, in first-class order in every respect, well equipped, and should conform fully to the requirements of the law. The defendants, on their part, agreed to furnish the fuel required for the vessel, and
“ that for and in consideration of the faithful performance of the stipulations of this agreement the party of the second part [the claimant] shall be paid, at the office of the disbursing quartermaster, U. 8. Army, at New York City, as follows: The sum *28 of $67 per day for each vessel employed, including the engineer and fireman, when employed by the day, and the sum of $10 per hour for each vessel employed, including the engineer and the firemen, when employed by the hour; and for the said remainder of the crew, when required, the sum of $13 per day.”
Within the time specified by the contract the claimant, being so called upon, provided and furnished a steam-vessel called the James Bo wen,which was accepted by the defendants’ officers, and was thereupon put into the public service. While so employed under the exclusive management and control of said officers, having a captain or pilot not licensed as required on all vessels excepting public vessels of the United States, vessels of other countries, and canal-boats (Revised Statutes, §§ 4400, 4438), said steamer collided with a ferry-boat and was so damaged that she was laid up for repairs sixty-seven days, during “which time the claimant provided and furnished another vessel for which he paid $65 a day. The cost of repairs was paid by the claimant, and the vessel was put into the public service again upon their completion, and within the fiscal year specified in the contract.
The claim is for the contract price of $67 a day for sixty-one days the vessel was undergoing repairs.
The industrious counsel for the defendants insists that the case presented is one sounding in tort, for consequential damages resulting from a collision, of which neither this court nor the accounting officers have jurisdiction,-and he cites numerous authorities on the subject of liability in cases of collision. He also urges that the damages complained of are in the nature of demurrage, on which subject he also refers to many adjudicated cases.
In our opinion the case is not one sounding in tort and there is no question of demurrage 'involved. The action is simply one of contract founded upon a written agreement between the parties, of which the court has undoubted jurisdiction, and is to be determined upon the true interpretation of the written instrument which is in the nature of a charter party, and is subject to the rules applicable to an instrument of that character.
It is true that the written contract declared on has not all the usual formalities of a charter-party, and is not technically drawn as such. A charter-party is not required to be in any *29 technical form nor even in writing, and it may be proved in whatever way the parties choose to make it. (Parsons on Maritime Law, chap, vm, section I.) Like all other contracts, its meaning, force, and effect, when a controversy arises, are to be determined by the court upon the language employed in connection with the subject-matter, the surrounding circumstances, and the acts of theparties. (Gibbons Case, 15 C. Cls. R., 174; Otis Case, 19 C. Cls. R., 467; and Otis Case, 20 C. Cls., R., 315.)
We have no doubt that it was the intention of the parties that the defendants should take such vessels as they required the claimant to provide and furnish and to keep the same to the end of the fiscal year specified, or at least for such time during that year as the exigencies of the Government required the vessels. After acceptance of the vessel by the defendants they could not have surrendered her and freed themselves from further liability until the end of the fiscal year, or at least until her use was no longer required during that time, and the claimant could not have withdrawn her during the same period. The defendants became the owners of the vessél for the time being. This is clear from the fact that they assumed the exclusive management and control of her, and they put her back into the public employment as soon as the repairs were completed and during the fiscal year mentioned in the contract.
In Leary v. The United States (14 Wall., 607) Mr. Justice Field, speaking for the Supreme Court, said:
“ There is no doubt that under some forms of a charter-party the charterer becomes the owner of the vessel chartered for the voyage or service stipulated, and consequently becomes subject to the duties and responsibilities of ownership. Whether in any particular case such result follows must depend upon the terms of the charter-party considered in connection with the nature of the service rendered. The question as to the ’ character in which the chaterer is to be treated is, in all case, one of .construction. If the charter-party let the whole vessel to the charterer with a transfer to him of its command and possession and consequent control over its navigation, he will generally be considered as owner for the voyage or service stipulated.”
*30 When a vessel under charter is laid up for repairs in consequence of damage by collision the rights and liabilities of the parties as between themselves has been long well settled. The owner must pay the cost of repairs and the charterer must pay the contract price for the time the vessel is undergoing repairs, provided he is in possession, command, and control over its navigation, as in the present case, at the time of the collision
As early as 1809 in Haveloch vs. Geddes (10 East., 555), which was an action upon covenants in a charter-party to pay for the hire of a vessel, Lord Ellenborough, in his opinion, laid down the rule of law thus :
“ The question, then, is whether, because the plaintiff has undertaken to keep the vessel tight, etc., the defendants have the right to deduct anything out of the freight they have to pay in respect of the time which may be taken up in making good such defects as may occur during the period for which the vessel is hired % And we are of the opinion they are not.
“From the accidents to which ships are liable it was in the ordinary course of things to expect that this ship might want repairs in the course of her voyage; and when the defendants were making their bargain they should have stipulated to deduct for the" time which might be exhausted in making those repairs if they meant to make that deduction.
“ Without such a stipulation we think the true construction of the charter party is, that whilst those repairs are going on the ship is to be considered as in the defendants’ service, and the defendants liable to continue their payments.”
This decision has been frequently cited with approval by other courts, and the rule has been adopted and followed by the Second Comptroller of the Treasury as applicable to cases in which the United States are the chartérers. (2 Digest of Decisions of Second Comptroller, secs. 1019, 1020.)
In the case of Leary vs. The United States, above cited, the defendants (The United States) were held not liable for the payment of the per diem after the collision and while the vessel was undergoing repairs, because by the contract the hiring was by the day at “ $250 a day for each-day that it might be retained under the charter.” No time was specified directly nor by inference for the continuation of the hiring, the vessel was not in the exclusive management and control of the defendants when the collision occurred, and the owner resumed *31 possession and took her from Port Royal, in South Carolina, to New York, where the repairs were done, and she was no longer required nor retained by the defendants under the charter.
The voucher drawn and returned by the deputy quartermaster general and transmitted to the accounting officers by the Quartermaster’s Department allowed only $55 a day, because that was the price paid by the owner for use of another vessel to take the place of the James Bowen while that vessel was laid up for repairs. That might be the proper measure of compensation if this were an action for damages suffered by the claimant in consequence of the acts of defendants, but it is an action on a contract and the claimant is entitled to receive the contract price, which is $67 a day. What he paid for the use of a substitute boat has no more to do with the measure of damages than has the cost to him of the injured vessel.
The claim seems to have been rejected by the accounting officers on the alleged ground that “ the boat was wholly under the control and management of the owner and his agents.” This was a mistake of fact now clearly established by the findings. Had the' real fact been then made to appear we may assume that those officers would have adhered to the former decisions of their offices.
Judgment will be entered for the claimant for the sum of $4,087.