Pbelle, J.,
delivered the opinion of the court:
The findings present the question as to whether the claimant is entitled to recover the difference between $42.75 and $56.43 per mile per annum for transporting the mails of the United States from Evansville to Washington, Ind., a distance of 57.70 miles, from January 1,1887, to July 1, 1888.
The road as originally constructed was operated between Evansville and Washington, and was designated as postal route No. 22026, over which the claimant contracted to carry the mails at $42.75 per mile per annum from July 1,1884, to June 30, 1887, “subject to future orders and to fines and deductions.”
*561 Subsequently tbe road was constructed northwardly to Worthington, a distance of 40.60 miles, over which the service was extended July 20,1886, to take effect from August 2,1886, the rate of compensation to be thereafter adjusted.
Thereafter the defendants, through the Second Assistant Postmaster-General, issued and directed to the claimant, as therein stated, the following communication:
u [2519. Railway adjustment division.]
“ Post-Office Department, Office of the “Second Assistant Postmaster-General,
“ Washington, I). G., Nov. 13,1886.
“Sir: The General Superintendent Bail way Mail Service has been directed to weigh the mails on your road, route Ko. 22026, between Worthington and Evansville, for thirty successive working days, commencing Dec. 1, 1886, for the purpose of obtaining the data upon which to adjust the pay in accordance with the several acts of Congress governing the same (see circular herewith), from Aug. 2, 1886, on extension to Worthington and on whole route from date of weighing.
“ The weighing will be done under the supervision of agents of the Department, and the Department will be pleased to have you cooperate in the taking of the weights if you desire to do so.
“Any information which yon may desire on the subject will be furnished upon application by the superintendent Eailway Mail Service for the division in which your road is located.
“Very respectfully,
“A. Leo Knott,
“ Second Assistant Postmaster-General.
“Mr. W. D. Ewing-,
“ Genii Manager Evansville and
“Indianapolis It. It., Evansville, IndP
As therein stated, the mails were weighed between Evansville and Worthington, and it was ascertained thereby that the daily average weight of mail matter transported over the route was 393 pounds; and in accordance therewith the rate of compensation over the extended portion of said route, from Washington to Worthington, was fixed at $56.43, “subject to future orders and to fines and deductions.”
The rate of compensation theretofore fixed for transporting the mails from Evansville to Washington remained unadjusted, though the daily average weight of mail matter transported thereon was the same as that transported over the extended portion.
*562 Of tbe adjustment so made over the extended portion of the . route the claimant was notified, April 15, 1887, and it continued thereafter to transport the mails at the rates fixed without objection.
Subsequently previous orders were modified “ so as to continue service and pay therefor from July 1,1887, to June 30, 1888,” and this service was performed by the claimant, at the several rates of pay above stated, without objection.
The claimant was under no legal obligation to carry the mails over its road, but contracted to do so between Evansville and Washington, Ind., for a specified time at the rate of compensation thereafter fixed at $42.75 per mile, subject to future orders, upon the basis of the “returns showing the amount and character of the service for thirty consecutive working days,” to which rate the claimant assented, performed the service, and was paid without objection or protest.
The claimant contends, however, that the communication of November 13,1886, directing the mails to be weighed between Evansville and Worthington was “for the purpose of obtaining the data upon which to adjust the pay” * * * “on the whole route from date of weighing,” as well as on the “ extension to Worthington” from August 2,1886, and that, the mails having beeu weighed in accordance therewith, and the daily average weight of mail matter thereby ascertained to be 393 pounds, it is entitled to the same rate of compensation for transporting the mails from Evansville to Washington it was allowed and paid for like service between Washington and Worthington.
The defendants contend that the rate of pay ($42.75) fixed for transporting the mails between Evansville and Washington from July 1, 1884, to June 30, 1887, “subject to future orders and to fines and deductions,” which was accepted and acted upon by the claimant, was binding until otherwise ordered, and that, no orders having been made changing the rate between Evansville and Washington, and the claimant having, notwithstanding the communication referred to and the weighing of the mails thereunder and the fixing of the rate on the extended portion at the rate of $56.43, continued to transport the mails at the several rates fixed, not only to June 30,1887, but thereafter, under an extension of its contract, to June 30, 1888, without objection, it is now too late to demand additional *563 Compensation, whatever its rights at the time of such adjustment might otherwise have been.
By the act March 3, 1873 (17 Stat. L., 558), now Eevised Statutes, section 4002, “ the Postmaster-General is authorized and directed to readjust the compensation hereafter to be paid for the transportation of mails on railroad routes upon the conditions and at the rates” therein stated, among which is “that the pay per mile per annum shall not exceed” the rates therein stated, based upon the “ average weight of mails per day,” such “average weight to be ascertained, in every case, by the actual weighing of the mails for such a number of successive working days, not less than thirty, at such times, after June 30, 1873, and not less frequent than once in every, four years, and the result to be stated and verified in such form and manner as the Postmaster-General may direct.”
By the act March 3,1875 (18 Stat. L., 341), the Postmaster-General was “directed to have the mails weighed as often as now provided by law by the employees of the Post-Office Department, and have the weights stated and verified to him by said employees under such instructions as he may consider justto the Post-Office Department and the railroad companies.”
By the act of July 12, 1876 (19 Stat. L., 78; Supp. to R. S., vol. 1, p. 110), the Postmaster-General was authorized to “readjust the compensation to be paid after July 1, 1876, for the transportation of mails on railroad routes, by reducing the compensation to all railroad companies for the transportation of mails 10 per cent per annum from the rates fixed and allowed by the first section of the act of March 3, 1873.” (Rev. Stat., § 4002.)
By the act of June 17,1878 (20 Stat. L., 140; Supp. to R. S., vol. 1, p. 187), the Postmaster-General was further authorized and directed to reduce the rate of compensation 5 per cent per annum from and after July 1, 1878.
In the case of the Chicago and Northwestern Railway Company v. United States (104 U. S., 680), a road aided in part by grants of public lands, a contract was entered into to carry the mails for four years from September, 1875, subject to the right of the Postmaster-General to “ curtail the service in whole or in part whenever the public interests, in his judgment, shall require such discontinuance or curtailment for any cause,” etc.
*564 Before tbe expiration of tbe term of tbe contract tbe Postmaster-General, pursuant to tbe acts of 1876 and 1878 (supra), reduced tbe rate of compensation, to wbicb reduction the company protested, but performed tbe service, and then brought its action to recover for sucb reduction, tbe court held that tbe company was entitled to recover, as these acts did not apply to contracts theretofore made.
In tbe latter case of Eastern Railroad Company v. United States (129 U. S., 391, 396), a contract was entered into by wbicb tbe company agreed to carry tbe mails for four years from June 30, 1877, at a stipulated rate, “unless otherwise ordered.”
On tbe 1st of July, 1878, tbe Postmaster-General reduced tbe rate 5 per cent under tbe provisions of tbe act of 1878 (supra), to which tbe company made no objection and continued to carry tbe mails for tbe rest of tbe term and received pay at tbe reduced rates, after wbicb tbe company brought suit to recover tbe amount of tbe reduction.
Tbe court held, affirming tbe judgment of this court (20 G. Cls. R., 23), that there was no contract to carry tbe mails for four years at fixed rates, as tbe rates agreed upon were subject to future orders of tbe Postmaster-General; that tbe company might have refused to carry tbe mails at the reduced rates, but having carried tbe mails at sucb reduced rates without protest or objection, it may be justly held to have assented thereto. Tbe difference between tbe two cases cited, tbe court say, is “that in tbe former tbe company bound itself to carry tbe mails during a certain period, and consequently its acceptance from time to time during that period of less than it was entitled to demand did not prejudice its right to claim what was legally due under its contract; whereas in tbe present case (Eastern Railroad Company) tbe company could have declined to accede to tbe readjustment of rates when they were made.”
In tbe case at bar, however, no readjustment was made in respect of tbe compensation between Evansville and Washington after tbe weighing of tbe mails under tbe communication of November 13, 1886, but was as to tbe rate of compensation over tbe extended portion of tbe route, of which tbe claimant was notified April 15, 1887, and thereafter without objection tbe company continued to carry tbe mails between Evansville and Washington at tbe rates originally fixed therefor, not only *565 during tbe period of its original contract, but for one year’s extension thereof.
The failure of the company to protest because the order of readjustment, after the weighing as aforesaid, was not made to apply to the compensation between Evansville and Washington, and no demand having been made therefor, it must be held that the company not only assented to the rate as originally fixed for carrying the mails between Evansville and Washington, but assented to a continuance of such rate during the term of its contract, thereby construing its own action as favorable to the rate fixed.
In this view of the case, it may be said' that from the time the claimant received the communication of November 13,1886, it had a right to presume that, after the weighing of the mails as therein provided, the Postmaster-General would make an order based thereon, adjusting the compensation to be paid “on the whole route from date of weighing;” and that, until the receipt of the letter of April 15,1887, advising it that an order had been made fixing the compensation on the extension only, it could not have protested or objected, and that therefore it is entitled to the same rate of compensation “ on the whole route from date of weighing ” to April 15,1887.
This is open to the objection, however, that the rate fixed by the Postmaster-General was to stand, “subject to future orders,” during the period of the claimant’s contract, and no orders having been made in respect of any change of the rate so fixed and no demand having been made upon the Postmaster-General therefor, such presumption, if then rightly existing, was overcome by the claimant’s acquiescence in the rate previously fixed; and the company must therefore beheld to the contract it made, though seemingly the equities of the case are with it.
For the reasons given the petition is dismissed.