Atkinson, J.,
delivered the opinion of the court:
Tliis is a suit brought by the Louisville and Nashville Bail-road Company (a United States mail transportation railroad) for money expended in equipping mail cars with certain mail-exchanging devices for receiving and discharging mail pouches at mail stations on its main line without stopping its trains.
Claimant company, at the time of the institution of the devices above referred to and prior thereto, under a continuing contract with the Post Office Department, was engaged in transporting the mails of the United States over all of its lines. Said contract, as shown by Finding I, was terminable by either party at any time upon reasonable notice, and the service of the company was to be subject to the conditions prescribed by law and the regulations of the Post Office Department. Section 713- of- the Postal Laws and Begula-tions, prior to July 1,1896, required'trains carrying the mails of the United States to check their speed at mail stations so that mail pouches could be exchanged' with safety to mail officials and the public. On July 1, 1896, said section was amended so as to read as follows:
“At all points at which trains do not stop where the department deems the exchange of mails necessary, a device for the receipt and delivery of the mails satisfactory to the department must be erected; and pending the erection of such device, the speed of trains must be Slackened so as .to permit the exchange to be made with safety.”
In addition to the above regulation, claimant company, in response t'o a “ distance circular ” issued by the Post Office Department on January 25, 1896, relative to the regular quadrennial readjustment of railway transportation rates, by its general manager, after filling the blanks in said circular, signed and returned the same to the Post Office Department. Said circular contained the following provision:
“ In case the Post Office Department authorizes the transportation of mails over this line, or any part of it, the railroad- company agrees to accept and perform the service upon the conditions prescribed by law and the regulations of the department. The statement of distances herein are correct.”
*277 Under the contract the service was to be subject to The postal laws and regulations, and if the department’s requirements were not within the terms of the-contract, claimant’s compliance therewith was voluntary, because the Post Office Department had no authority to compel claimant company to transport the mails upon terms to which it had not agreed. (Sec. 3999, Revised Statutes; Eastern Railroad Co. v. United States, 20 C. Cls., 23; Evansville & Indiana R. R. Co. v. United States, 32 C. Cls., 555; Penn. v. Wheeling, 18 How., 441.)
It seems clear, from what we have stated above, that it was incumbent upon the claimant company, in order to comply with the postal regulations, to materially reduce the speed of its trains at mail stations, or to entirely stop them, -or provide some device, satisfactory to the Post Office Department, by which mail bags could be exchanged when trains were running at full speed. It chose the latter plan, and for a considerable period theretofore it had been using a-device by means of which mail was received and delivered at mail stations while trains were running at full speed. This device was not satisfactory to the department,-because it-endangered the lives not only of postal employees but of persons standing near the passing trains when mail pouches were being thus exchanged, and not infrequently destroyed mail matter by the car wheels passing over it. (Finding II.) The Post Office Department, with a desire to secure a more satisfactory device for this purpose, on February 28, 1895, issued-an advertisement for proposals for improvements in mail catchers, and shortly thereafter appointed a committee of seven-experienced Eailway Mail Service officials to ascertain-by suitable tests the merits of the different devices submitted in response to its advertisement. This committee -reported favorably upon four devices tested by them which, in their judgment, would work satisfactorily. Thereafter the superintendent of the Eailway Mail Service issued a circular letter to claimant company and other railroads engaged in the transportation of the mails of the United States announcing the findings of the committee and recommending the adoption of any one of these devices by the different railroad managements engaged in transporting the mails of the United States. It *278 appears, however, that all of these devices proved to be more or less defective, but the Post Office Department was of the opinion that the Fleming patent was the nearest satisfactory, and upon the department’s opinion and recommendation claimant company, after considerable delay, installed it upon its lines. After giving this device a careful test it proved to be inadequate to handle satisfactorily the heavy mails on its main line, and it was abandoned. Thereupon claimant company instituted this suit against the United States to recover the sum of $4,368.72 alleged to have been expended by it in installing said Fleming mail-catching device on its main line.
It is contended by the claimant that there was an implied contract on the part of the Government, in case the device recommended by it proved unsatisfactory, to reimburse claimant for the cost of its installment. In other words, that the Government assumed the risk that the device would answer all the purposes for which it was intended; and from the facts as found that is the only question before the court. As we have already stated, it was optional with claimant to stop its trains at all stations where mails were to be received and delivered, so that the same could be changed safely, or to adopt, some device which would accomplish that purpose while the trains were in motion, and it adopted the latter method.
A contract implied in fact arises only where there is circumstantial evidence showing that the parties thereto intended to make a contract. That is to say, to create such a contract the facts must show an intention or meeting of the minds of the parties to the effect that it was agreed between them that the Government was to reimburse claimant for its outlay in installing the device on its railroad. (Harley v. United States, 198 U. S., 229.) It is clearly shown in Finding IX that there was not only no coming together of the minds of the parties to the alleged contract that the defendants were to bear the expense of the device if it should prove a failure, but, on the contrary, both parties understood that any expense by the introduction of the device was to be borne by the claimant company. The mutual understanding of both parties to the effect that claimant was to bear such *279 expense and any incidental loss which might accrue, must be given controlling weight in determining their rights and liabilities. Hence no implied contract arose.
It was the desire of the claimant to carry the mails without stopping its trains at all mail stations, and the Government was willing it should do so, if it would adopt some system by which this could be done with safety to the public as well as to the mails; and it was more to the advantage of the claimant than to the Government that this should be done, and the Government very properly required that any system adopted must meet with its approval. For this purpose it went to the trouble and expense of investigating the different devices for that purpose which had been invented, and recommended several which met its approval.
This method of changing mails was in a tentative state, and it was known by both parties that any device adopted would necessarily be an experiment. Therefore claimant, with the advice, and advice only, of the Post Office Department, made the experiment and must pay for the failure.
For the reasons given the petition must be dismissed, and judgment entered for the United States.
Howry, J., took no part in the decision of this case.